CASE 74—PETITION EQUITY—DECEMBER 7.

# Clay's Adm'r v. Edwards' Trustee.

APPEAL FROM BOURBON CIRCUIT COURT.

1. CONCEDING THAT A TRUSTEE HAS THE RIGHT TO FILE A PETITION IN EQUITY FOR THE PURPOSE OF BEING RELEASED AS TRUSTEE, and having a new trustee appointed in his stead, the court has no jurisdiction to hear his application unless he brings all the beneficiaries of the trust before the court by process, and sets forth in his petition the reason why he wishes to be released.

2. A JUDGMENT RELEASING A TRUSTEE AND APPOINTING ANOTHER IN HIS STEAD BEING VOID, he continued, notwithstanding the judgment, to be the legal trustee of the estate, and responsible for its faithful administration by the person appointed in his stead, in whose hands it was placed with his consent and by his procurement, and he and the person named as his successor are jointly and severally liable to the beneficiaries of the estate, regardless of the bond executed by the person named as his successor, upon which he became surety.

3. FINAL ORDER—REDOCKETING.—A judgment releasing a trustee and appointing another in his stead, and accepting a bond from the new trustee, in an action brought for that purpose, was final, and after the close of the term the court was deprived of all further jurisdiction of the action, and subsequent orders redocketing the case for the purpose of having the master to settle the accounts of the new trustee, and for the purpose of releasing his surety, were• void.

4. A BOND EXECUTED BY ONE AS TRUSTEE UNDER A VOID APPOINTMENT, although not good as a statutory bond, may be enforced as a common law bond against both the principal and his surety, the former having received the trust estate and failed to account for it.

J. QUINCY WARD AND B. F. BUCKNER FOR APPELLANT, CLAY'S ADM'R.

1. The court erred in failing to quash the summons, and strike the so-called petition from the files. The Code requires a caption, and provides what that shall contain. The change of parties made by the amended petition without leave of court was improper and unauthorized. (Civil Code, section 110.)

2. The appellees having declared on a bond and a settlement made by consent in the action brought by them or for their benefit, can not, in the same action, rely on the invalidity of the proceedings. A clearer case of departure could not well be imagined. (1 Chitty's Pleading, 674-5 Gould on Pleading, 27, 28, 421 and 422; Civil Code, sec. 101.)

3. The court erred in not formally acting on the plaintiff's demurrer to the answer of Clay's administrator, and in proceeding to final judgment without giving him an opportunity to amend. (Logan v. McMillan, 5 Dana, 485.)

4. The bond sued on being made payable to Patsey K. Edwards, is suable alone by her, and the other parties have no right of action thereon. (Moore v. Waller's Heirs, 1 A. K. M., 488; Graves v. Downey, 3 Mon., 356; Bradshaw v. Commonwealth, 3 J. J. M., 632; Felts v. Brown, 7 J. J. M., 147; Bell v. New Mexico, 16 Wall., 541; Warfield v. Brand, 13 Bush, 77; National Bank v. Grand Lodge, 98 U. S., 124; Mellen v. Whipple, 1 Gray, 320; Smith v. Lewis, 3 B. M.; Allin v. Thomas, 3 Met., 197; Garvin v. Mobley, 1 Bush, 48.)

5. The plaintiffs in this case having declared on a bond executed, and a settlement made in the case of Patsey Edwards' trustee on petition, are estopped to dispute the validity of the proceedings on which they base their claim.     (Bigelow on Estoppel, 578; Herman on Estoppel, sec. 468; Brewer v. Sparrow, 7 Barn. and Cress., 310; Bank of Columbia v. Hart, 6 Ohio St., 33; Betzhoover v. Commonwealth, 2 Watts, 126; United States v. Price, 9 Howard, 83.) ·

6. The judgment ratifying and approving the settlement made in the action of Patsey Edwards' trustee. on petition is conclusive until set aside or reversed on some ground of equitable cognizance.     The same rule does not apply in impeaching a decree of a court of chancery that applies in attacking *ex parte* county court settlements of fiduciaries.

7. Even if the judgment confirming the settlement of Clay's accounts is not conclusive, the petition does not contain averments sufficient to authorize the court to surcharge the settlement. The errors and defects in the settlement should have been specifically set out. (Pit v. Cholmondely, 2 Vesey, Sen., 566; Story's Eq. Juris., sec. 523; Consequa v. Fanning, 3 Johnson Ch'y, 595-6; Wooldridge v. Watkins, 3 Bibb, 352; Tanner v. Skinner, 11 Bush, 129; Campbell v. Williams, 3 Mon., 124; Crook v. Turpin, 1 B. M., 186; Quinn v. Stockton, 2 Litt., 343; Moore v. Beauchamp, 5 Dana, 75.)

8. The charge of interest against the trustee during the life of the life tenant was unjust.

9. The failure to allow commission on the balance in Clay's hands was error to appellant's prejudice.    (Tanner v. Skinner, 11 Bush, 120.)

G. C. LOCKHART ON SAME SIDE.

(Brief not in record.)

J. W. LUCAS FOR APPELLEE.

1. The fact that the caption of the petition did not conform to the requirements of section 110 of the Code was not ground for quashing the summons and striking the petition from the files.  The plaintiffs were properly given an opportunity to·amend.

Clay's Adm'r v. Edwards' Trustee.

2. For the purposes of this suit it is immaterial whether the proceeding in which the bond sued on was given was regular and legal or not. It is sufficient that Clay received the trust estate from the former trustee, and voluntarily executed this bond, and that Fry voluntarily became his surety. (Thompson v. Buchannon, 2 J. J. M., 418; Cotton's Guardian v. Wolf, 14 Bush, 238; Emmons v. Morrison, &c., 5 Dana, 224.)

3. The claim of a departure in the plaintiff's pleadings is without foundation. The action is founded upon the bond, and the so-called settlement is not referred to as the foundation of the action, but merely as evidence.

4. The settlement of 1872 was void, and does not conclude the rights of appellees. The redocketing of the case was irregular, illegal and void. There was, therefore, no case in court, no parties properly before the court, and no one concluded by the order approving the master's report.

5. In order to maintain the action on the bond, it is not necessary that the plaintiffs should claim the validity of the proceedings in which the bond was given. Therefore, the plaintiffs, by repudiating the settlement, are not estopped to claim the validity of the bond.

6. As the so-called settlement of 1872 was utterly null and void, there was no settlement to impeach; but even if there had been a settlement, the charges were sufficiently specific. It was not necessary to go through the list of more than two hundred credits and impeach each one separately.

7. The bond sued on is clearly a covenant for the benefit of the remainder-men, and they were entitled to recover upon it. (Jones v. Higgins, 80 Ky., 409; Emmons v. Morrison, 5 Dana, 225.)

8. Clay and Fry are liable without reference to the bond.

9. The claim of error in charging Clay with interest is made for the first time in this court, and is, therefore, too late.

10. In view of the improper management of the estate, and the great inconvenience, delay and cost the beneficiaries of the trust have been put to, the commission allowed the trustee was very liberal.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

On the 2d day of March, 1866, Ossian Edwards, of Bourbon county, Ky., deeded to J. N. Fry all of his personal estate, consisting of the proceeds of a tract of land, amounting to $28,909.15, and household and kitchen furniture, and choses in action of every description, to be held in trust by J. N. Fry for the

exclusive use and benefit of Patsey K. Edwards, wife of Ossian Edwards, as separate estate during her life, with remainder to such of her children by Ossian Edwards as might be living at her death, and to the living descendants of such as might have died before her death, with power in said trustee to invest said estate, by the consent of Patsey K. Edwards, in writing, in any real or personal estate for said trust purposes; also to sell, reinvest and resell and reinvest said estate from time to time as the interest of said wife and children, in his and her judgment, might require.

J. N. Fry accepted said trust and proceeded to administer it until the 19th day of April, 1867. On that day there was a paper filed in the Bourbon Circuit Court, styled as follows:

"Bourbon Circuit Court.

"Patsey Edwards' Trustee, on petition."

Then follows what purports to be the statement of J. N. Fry, trustee for Patsey Edwards, and Patsey Edwards herself, setting forth the conveyance of said estate to J. N. Fry, in trust for the separate use of said Patsey for life, with remainder to his, Ossian Edwards', children by her, etc., and that said Fry had accepted said trust, and that it had become inconvenient for him to act, and asking to be released as trustee, and that some one be substituted in his stead. Then follows what purports to be the statement of Patsey Edwards, expressing her willingness to the release of Fry as trustee, and asking the appointment of S. H. Clay in his stead. This paper was not sworn to nor signed by any one.

On the same day that said paper or petition was filed an order was made displacing said Fry as trustee, and

appointing S. H. Clay trustee in his place, and "the parties hence dismissed." And on the same day, S. H. Clay executed bond as trustee, with J. N. Fry as his surety. At the October term, 1868, of the Bourbon Circuit Court, an order was made redocketing the case, and discharging J. N. Fry from any liability as surety for S. H. Clay on said bond, and directing that said Clay do execute another bond as trustee, with W. H. Pierce as surety, payable to Patsey Edwards; and thereupon Clay executed another bond, with W. H. Pierce as surety, and the papers were ordered filed away. On whose motion the case was redocketed, and the orders taken, does not appear. At the April term, 1872, of said court, it was entered upon the record that, "by consent of parties, it is ordered that this action be redocketed, and is referred to the master, who is directed to audit," etc. On the next day the master filed a long report showing that there had come to the hands of S. H. Clay as trustee, including interest, over twenty thousand dollars, all of which he had expended, and more, too, by over twenty-five hundred dollars. The report of the master was confirmed in haste, and the papers again filed away. It does not appear at whose instance said order redocketing the case was made or the orders taken. The order simply recites, "by consent of parties." S. H. Clay died in 1873, and H. C. Clay was appointed his administrator.

H. T. Paton, who had been appointed trustee in place of S. H. Clay, and Patsey K. Edwards and her children brought suit against H. C. Clay as the administrator of S. H. Clay, and J. N. Fry as surety on the bond of S. H. Clay. They, H. T. Paton, &c., set out in their peti-

tion and amended petition the deed of trust of Ossian Edwards to J. N. Fry; that Fry accepted the trust and received the trust estate, amounting to over $28,000; that Fry afterwards turned over to S. H. Clay the amount of the trust estate remaining in his hands, who had been appointed trustee in place of Fry by the Bourbon Circuit Court, and who had executed bond as such trustee, with Fry as his surety; and the report of the master showed that there had come to the hands of S. H. Clay, including interest thereon, over twenty thousand dollars, and in violation of his duties as trustee, and in violation of the rights of the plaintiffs, he had paid out, to numerous persons not entitled thereto, large parts of said estate. The administrator and Fry filed separate answers.

The answers traverse the charge of improper use of the trust estate; that it had been paid out to persons not entitled to it, etc. They also plead the settlement of S. H. Clay's accounts made in 1872 by the master commissioner of the Bourbon Circuit Court, and its approval by the court, in bar of the action. Fry also pleaded his release as surety on S. H. Clay's bond by the Bourbon Circuit Court in bar of the action as to him. The plaintiffs, in their reply, attacked the proceedings of the Bourbon Circuit Court, by which Fry was released as surety on S. H. Clay's bond as trustee, and by which the settlement was made, upon the ground that they were void, etc.

The court below not only adjudged that these proceedings were void, but adjudged that the judgment of the court releasing Fry as trustee and appointing S. H. Clay trustee in his stead was void also. The lower

court then referred the case to the master commissioner for the purpose of auditing, etc. The master reported the balance due plaintiffs, after deducting all proper credits, which, together with interest thereon, amounted to thirteen thousand eight hundred and eighty dollars. The lower court rendered judgment for this sum against H. C. Clay, as administrator of S. H. Clay, and J. N. Fry. From that judgment they have appealed to this court.

The paper filed on the 19th of April, 1867, with the caption, "Patsy Edwards' trustee on petition," as a pleading, is certainly a nondescript. It does not come up to any of the requirements of the Code of Practice, which was in force at that time. Besides, the paper brought none of the beneficiaries of the trust before the court; nor did it profess to do so, except Patsey Edwards, and as the paper was signed by no one, nor sworn to by any one, it can not be said that she was before the court.

Conceding that Fry had the right to file a petition in equity in the circuit court, for the purpose of being released as trustee, and the appointment of a new trustee in his place, he could do so only by filing his petition, and making all of the beneficiaries of the trust estate parties, and bringing them before the court by process, etc., and setting forth in his petition the reason why he wished to be released, and the appointment of a new trustee. (Hill on Trustees, page 280.) None of these things occurring, the lower court had no jurisdiction to hear and determine Fry's application for a release and the appointment of a new trustee. Therefore, its judgment releasing him as trustee and appointing S.

H. Clay in his stead was void. It follows that all of the subsequent proceedings of the court taken at the October term, 1868, reinstating said case on the docket, and releasing Fry as the surety of S. H. Clay on his bond as trustee, and the taking of a new bond from Clay, with W. H. Pierce as surety, and at the April term, 1872, again reinstating said case on the docket, and ordering the master to settle and audit the accounts of S. H. Clay as trustee, and the judgment approving and confirming the master's report of settlement, were void.

The judgment of the circuit court rendered on the 19th of April, 1867, releasing Fry as trustee, and appointing Clay in his place being void, and nothing occurring in the subsequent proceedings of the court validating said void judgment, it follows that Fry, notwithstanding said judgment, continued to be the legal trustee of said estate; and as the same was placed in the hands of S. H. Clay, with the consent of Fry and by his procurement, he is responsible as such trustee to the beneficiaries of the trust, for Clay's faithful administration of it according to the terms of the trust deed, and for his payment of it to the proper parties.

But conceding, for the sake of the argument, that the judgment rendered on the 19th of April, 1867, releasing Fry as trustee and appointing Clay in his stead, and taking Clay's bond as trustee, with Fry as his surety, was valid, yet it must also be conceded that the judgment was final, and that the dismissal of the parties to the action deprived the court, after the closing of its term, of all further jurisdiction of the action or its sub-

Clay's Adm'r v. Edwards' Trustee.

ject-matter; and that jurisdiction could not thereafter
be regained for any purpose whatever, except by a reg-
ular petition, bringing all of the parties interested be-
fore the court, and setting forth the grounds for the
relief desired, because the judgment was not only final,
but was executed at that term of court, and nothing,
by the terms of the judgment, was directed to be done
thereafter, and which remained unfinished.   Therefore,
the subsequent orders redocketing said case—the first
for the purpose of releasing Fry as the surety of Clay;
the second for the purpose of having the master to set-
tle the accounts of Clay—were void and of no force.

According to the foregoing views, the bond executed
by Clay, with Fry as his surety, is void as a statutory
bond, but it is not void as a common law bond.

This court, in the case of Cotton's Guardian v. Wolf,
14 Bush, 246, says: "The general rule is that a bond,
whether required by statute or not, is good at common
law if entered into voluntarily and for a valid consider-
ation, and if not repugnant to the letter or policy of the
law."

"Cotton, on his own motion, was permitted to qual-
ify as guardian, and, by the execution of the bonds,
obtained the possession of the estate belonging to each
one of the infants, and, after converting it to his own
use, his surety, the party who enabled him to reduce it
to possession by going on the bond, is now insisting
that he is not responsible because the entire proceeding
under which the appointment was made is void.  *  *  *
One who voluntarily qualifies as guardian, whether in
good faith or as a mere wrong-doer, and, by the execu-
tion of a bond, obtains the possession of the ward's

estate, will be held liable, together with his surety, for it, although the appointment may be void."

The appellees sued on the bond executed by S. H. Clay, with Fry as his surety. They set out in their petition and amended petition, in substance, that S. H. Clay had not faithfully executed the trust which he had assumed; that he had violated said trust duties by paying out a large part of the trust estate to persons not entitled to it, etc., etc. It is true that the petition not only sets forth the bond, but the subsequent proceedings of the court above alluded to, including the settlement by S. H. Clay with the master, and attempts to surcharge that settlement. But none of these allegations were necessary to constitute a cause of action; all of them should be regarded as surplusage. The lower court doubtless did so; then, regarding them as surplusage, and as stricken out of the petition and amended petition, the allegations left therein are sufficient to sustain an action on the bond as a common law bond.

The bond and its execution by Clay, with Fry as his surety, are sufficiently set out; the breach of the bond is sufficiently set out, and the relief demanded is sufficiently set out.

The foregoing views dispense with the necessity of discussing the questions raised as to the sufficiency of the pleadings, and as to whether the appellees' reply is a departure from the cause of action set up in their petition and amended petition. These questions are made upon the idea that the bond is good as a statutory bond, and that the subsequent proceedings of the court are valid.

Clay and Fry are not only bound upon this bond as a common law bond, and appellees' action may, therefore, be treated as well taken, but they could have been held bound without reference to the bond, because the attempted release of Fry as trustee, and the appointment of Clay in his place being void, Fry in fact continued to be the legal trustee; and Clay having acquired the possession and control of the estate as a wrong-doer, by the consent of Fry, they are both jointly and severally liable to appellees for any mismanagement of it by Clay.

We find no error in the master's report.

The judgment of the lower court is affirmed.