CASE 42—PETITION BY J. O. JENKINS AND OTHERS FOR A WRIT OF PROHIBITION AGAINST A. S. BERRY, JUDGE OF THE CAMPBELL CIRCUIT COURT, AND C. L. RAISON TO PREVENT THEM FROM INTERFERING WITH THE PLAINTIFF'S CONTROL OF THE SPEERS HOSPITAL AND FROM REMOVING THEM AS TRUSTEES.—DEC. 17.

# Jenkins and Others v. Berry, Judge and Others.

TRUSTS—POWERS OF TRUSTEES—DISCRETIONARY ACTION—REMOVAL—JURISDICTION OF EQUITY—FORM OF PROCEEDING—PROHIBITION—WHEN ISSUED.

1. A will devising property in trust for the establishment and maintenance of a hospital, and providing that the hospital shall be erected, maintained, and conducted in such manner, and upon such plan as in their judgment, will do the greatest good, gives the trustees a wide discretion as to the manner in which the hospital is to be maintained and conducted and ex-

Jenkins and Others v. Berry, Judge, and Others.

empts them from interference from any source in their control of the institution, unless they are guilty of such mismanagement, extravagance, or fraud as to endanger the trust estate or violate the rights of the beneficiaries.

2. A will devising property in trust for the erection and maintenance of a hospital, and providing that the trustees shall annually report their acts to the highest court in the county having original equitable jurisdiction, and requiring the court to exact from the trustees proper bonds for the performance of their duties, and authorizing it to allow them annually a just and fair compensation, does not vest in the circuit court, as the highest court of original equitable jurisdiction, power to remove the trustees, except, perhaps, for a failure upon their part to give bond, and gives the court no visitorial or other supervision over the trust, or the actions of the trustees in maintaining and conducting the hospital.

3. Although no power is given the circuit court, in an instrument creating a charitable trust, to supervise the same or to remove the trustees, yet such court has, as a court of equity, inherent power to interfere, upon proper grounds, and in a proper proceeding, to prevent such acts or conduct upon the part of the trustees as would result in serious injury to the trust estate or loss to the beneficiaries.

4. In order to authorize the chancellor to inquire into an alleged mismanagement of trust property, or a misappropriation of a trust fund dedicated to a charitable or private use, his jurisdiction must be invoked by some one interested in the execution of the trust, or in the name of the attorney-general, as the representative of the State, in an action or proper proceeding authorized by law to be instituted for that purpose; and the chancellor can not act on his own volition and upon his own motion, without information or action upon the part of any one else.

5. Under Constitution, section 110, conferring upon the supreme court authority to issue such writs as may be necessary to give it general control of inferior jurisdictions, a writ of prohibition may issue not only to prevent a court of inferior jurisdiction from acting in matters outside of its jurisdiction, but also in cases where the right of appeal does not afford a plain, speedy, and adequate remedy.

HODGE & WOLFF, ATTORNEYS FOR PLAINTIFFS.

1. The chancellor has no visitorial powers, and he must act according to the ancient rules of equity practice.   Moore v.

Moore, 4 Dana, 365; Chambers v. Bap. Ed. Soc., 1 B. M., 215; Attorney-General v. Wallace, 7 B. M., 611.

2. The provision in the will confers no jurisdiction on the chancellor.

"The provision in the deed authorizing the trustee to require the petition in chancery to be filed . . . conferred no power on the chancellor he did not possess without such a provision, nor did it lessen the jurisdiction of the chancellor to compel an exercise of the discretion by the trustee," etc. Walker v. Smyser, 80 Ky., 631.

3. "Conceding that the trustee had power to file petition for purpose of being released, and new trustee appointed, the court has no jurisdiction to hear his application, unless he brings the beneficiaries to the court." Clay v. Edwards, 84 Ky., 548.

"If the defendant has abused his trust, etc., the remedy for any person or for any person having the right to institute suit, is in action to have the trustee removed." Carroll County, &c., v. Gallatin Acd., 20th R., 827.

4. The old case was ended. It was for the sole purpose of determining the power of the trustees to borrow, and when that was decided, which was four years ago, the case was ended. Clay v. Edwards, 84 Ky., 548.

5. Judge Berry ·in his order does not assume to act in the old case, but expressly admits he acts independently of it, saying, "It does not matter how this matter came before me."

6. The court has no authority to proceed except upon proceeding instituted against the trustees. "Section 2039 of the Kentucky Statute, which authorizes courts of chancery to remove guardians for neglect or breach of trust, does not give authority to the court to make the removal on *ex parte* affidavits, nor without proceedings instituted against the guardian for that purpose. Phillips v. Williams, 26 Ky. Law Rep., 656.

C. L. RAISON, JR., FOR DEFENDANT.

1. The right and power of a court of chancery in this State to control a charitable trust is not an open question. Church v. Church, 18 B. Mon., 635; Hadden v. Chorn, 8 B. Mon., 78; Gass v. Wilhite, 2 Dana, 170; Moore v. Moore, 4 Dana, 354; Cromie v. Louisville Orphans' Home, 3 Bush, 365; Attorney-General v. Wallace, 7 B. Mon., 611; Perry on Trusts, secs. 687, 693, 694, 707, 748; see notes to sec. 748, vol. 2.

2. A court of equity may remove trustees for proper cause by proper proceedings. Attorney-General v. Wallace, 7 B. Mon., 611; Perry on Trusts, section 277, 280, 282, vol. 1.

Jenkins and Others v. Berry, Judge, and Others.

3. The removal may be made by proceedings under a bill in chancery. Or upon motion in proceedings pending in court involving the administration of the trust estate.

4. The judgment of the court requires them to provide a sinking fund for the payment of the borrowed money, and requires them to report to the court and mention the condition of this fund.

This they have not done, no sinking fund has ever been created by the trustees, and no mention of that fund has been made by the trustees in any of their reports.

5. This state of facts gave the chancellor the right to issue the rule against the trustees. They have violated his order; have not complied with the judgment, and he has jurisdiction to issue the rule against them to show why they should not be removed upon this ground.

6. The will of Mrs. Speers requires the trustees to report to the court; they and their predecessors in the trust have always so reported.

It does not lie in the mouths of these trustees to say they are not required to report to the Campbell chancery court—circuit court.

The will of Mrs. Speers requires them to so report. They were appointed by the Campbell circuit court, under the will, and accepted the trust under the will, and that ends the matter as to them.

7. The report of these trustees filed in November, 1904, shows that this trust has been badly managed by these trustees; that the trust estate is in danger of bankruptcy and utter ruin; that there is a mortgage of $10,250 now due, note unpaid, no funds wherewith to pay it, and that the mortgage is subject to foreclosure at any time.

8. Their own reports submitted by them to the chancellor, and upon which he must pass, show the condition of the trust estate and furnish a basis for the rule, and information upon which the court may act.

OPINION OF THE COURT BY JUDGE SETTLE—GRANTING WRIT.

By their petition filed in this court, the plaintiffs, J. O. Jenkins, John L. Phythian, and W. E. Senour, trustees of the Speers Hospital, situated in the city of Dayton, Campbell county, Ky., ask a writ of prohibition against the defendants, A. S. Berry, judge of the Campbell circuit court,

and C. L. Raison, Jr., *amicus curiae* of the Campbell circuit court, preventing them from interfering with the plaintiffs' control of the Speers Hospital, and from attempting to remove them as such trustees. It appears from the statements of the petition that Elizabeth Speers, then a resident of Campbell county, died testate, leaving a large estate, which, after the payment of certain specific legacies named in her will, she by that instrument devised to three trustees, B. K. Rockford, C. B. Schoolfield, and W. G. Pickering, in trust for the "establishment and maintenance" of the hospital in question. So much of the will as relates to the trust is contained in the nineteenth clause thereof, which is as follows: "It is my will that my said executors after the payment of my debts, and after the payment of those specific legacies which are in no way contingent, and after provision for all contingent legacies, and the support and education of the said Bina Elizabeth Speers Makibben, as hereinbefore set out, and the payment of all costs and expenses incident to the settlement of my estate, convey and transfer the entire balance of my estate, real and personal and mixed, of every kind wherever situated, to Dr. B. K. Rockford, Dr. C. B. Schoolfield and Wm. G. Pickering, as trustees in trust for the establishment and maintenance of a hospital in the city of Dayton, in Campbell county, Kentucky. The said hospital to be erected, maintained and conducted in such manner and upon such plan as in their judgment would do the greatest good. Said trustees shall annually report all their acts and doings to the highest court in said county having original equitable jurisdiction and all vacancies in said trustees shall be filled by said court. Said court shall require from said trustees proper bonds for the performance of their duties and it may allow them annually out of the trust funds a just and fair compensation for their labor. If any legacy

should lapse, or if there should remain in any fund set apart for any purpose in money after the execution of said purpose, then all such moneys and all moneys or property which from any cause may at any time be in or come to the hands of my said executors after carrying out the provisions of this will other than said provisions as to said hospital, shall be paid over to said trustees and shall become a part of said hospital trust fund."

It appears from the record that the trustees named in the will and others that succeeded them resigned, and finally the appointment fell upon the plaintiffs, who are now the duly qualified and acting trustees of the will of Elizabeth Speers, and, as such, in full control of the hospital and trust fund. It further appears that the former trustees made annual reports of the Campbell circuit court of their management of the Speers Hospital, including a statement of its financial condition, and that the present trustees have done likewise, except that no report was made by them for the present year until November 19, 1904. It also appears that the defendant A. S. Berry, judge of the Campbell circuit court, in an interview with John E. Waterhouse, the secretary of plaintiffs, made complaint of their report for the previous year, which had been filed in the Campbell circuit court several months theretofore, and before he became judge of that court, and directed the secretary to withdraw the report and make it conform to certain suggestions then made by him. This direction was followed by the secretary, and the report placed in the hands of an expert accountant, with instructions to make full investigation of the accounts of the trustees, and of their management of the affairs of the Speers Hospital. Before the work of the accountant was completed, and, as shown by his affidavit, before it could be completed, the defendant Berry, as judge of the Campbell circuit court,

upon his own motion, on the 9th day of November, 1904, made orders awarding rules against the plaintiffs and their secretary, respectively, returnable November 12th, requiring the former to show cause why they, as trustees of the Speers Hospital, had not furnished a satisfactory report of the business and condition of the hospital, and the latter to return the last report of the trustees, which he had withdrawn by the direction of the defendant Berry as judge. The rules were duly issued and served upon the parties. The secretary filed response accompanied by the report demanded of him, explaining in the response the delay in filing the report. Thereupon the rule against the secretary was dismissed, and the report referred to the defendant C. L. Raison, Jr., as *amicus curiae* of the court, to which, and the order awarding the rule against him, the secretary, John E. Waterhouse, excepted. In obedience to the rule against them, the trustees appeared in the court of the defendant Berry, judge, and entered motion, supported by the necessary affidavit, to require him to vacate the bench, in order that a special judge might hear the defense to the rule, which motion was overruled, and an exception taken thereto. Thereupon the trustees demurred to the jurisdiction of the court, and upon the further ground that the issue of the rules was without authority of law, and the orders therefor void, because there was no action or proceeding against them then or at any time pending in the Campbell circuit court, and no application for the rules had been made by any one having an interest in the trust estate, or a right to ask such rules.

The argument upon the demurrer to the rule against plaintiffs was set for hearing November 21st. On the 14th day of November the defendant Berry, as judge of the Campbell circuit court, upon his own motion, made another order, awarding a second rule against the plaintiffs, returnable No-

vember 21st, whereby they were required to show cause why they had not made and filed their annual report as trustees of the Speers Hospital for the year beginning July 31, 1903, and ending August 31, 1904. This rule was likewise served upon them.

On November 19, 1904, plaintiffs filed what purported to be a complete report of their doings as trustees of the Speers Hospital from August 31, 1903, to August 31, 1904, which report purported to contain a full showing of all moneys received and disbursed by them, and also a comparative financial statement of the condition of the hospital from its foundation, prepared by one Guy Kennedy, a skilled accountant, whom they had employed for the purpose of making a thorough examination of all the affairs of the institution. Plaintiffs also filed with their report a response to the rule of November 14th, wherein was set forth the same grounds of objection and resistance to the rule that were presented by their demurrer to the former rules. The response was accompanied by the affidavit of Kenneday, the accountant, showing that his work in connection with the report was only completed November 18th, the day before the filing of the report, and that plaintiff could not, therefore, have filed the report sooner. On November 21st the defendant Berry made an order referring the last-named report to C. L. Raison, Jr., the *amicus curiae*. But neither this order, nor the one referring to him the report returned by plaintiffs' secretary, John E. Waterhouse, contained any instructions as to what the *amicus curiae* should do with them, nor do they require of him any report thereon. It is averred in the petition that the *amicus curiae* is the attorney of a former trustee of Speers Hospital, and that he holds a claim for a considerable amount against that institution, which was contracted while the client was one of the trustees thereof, and that he and his

client are both hostile to the plaintiffs and the institution of which they are trustees; that the defendant Raison, as *amicus curiae*, without authority or notice to plaintiffs, prepared and filed in the Campbell circuit court a voluminous report, in which the plaintiffs are wrongfully criticised, and their action as trustees misrepresented; that the defendant Berry, as judge of the Campbell circuit court, illegally confirmed the report made by the defendant Raison, without giving plaintiffs an opportunity to object or except thereto, and, without passing upon their demurrer, he adjudged their response to the several rules insufficient; that on December 12, 1904, he made another order awarding a third rule against them, returnable December 14th, whereby they were required to show cause why they should not be removed from the trusteeship of the Speers Hospital; that the rule last awarded has been issued and duly served upon them, and, unless prohibited by an order of this court from so doing the defendant Berry will illegally remove them as trustees, and appoint others in their stead. It is further averred by plaintiffs that the several orders made by the defendant Berry awarding rules against them have never been entered upon the records of the Campbell circuit court, nor were they made or entered in any action or proceeding instituted or pending in the court presided over by the defendant Berry as judge.

The answer of the defendant Berry, in substance, denies the material averments of the petition as to the alleged illegal acts complained of, and charges gross mismanagement upon the part of the trustees of the hospital and its affairs, especially as to its finances, and justifies his issual of the several rules against the plaintiffs upon the ground of their alleged failure to make reports to the Campbell circuit court as required by the will of Elizabeth Speers, and of their alleged general incompetency as well. The answer presents the

further defense that the will of Elizabeth Speers confers upon him, as judge of the Campbell circuit court, authority to supervise the trustees of the hospital and their management of its affairs, and, in the event of their incompetency or failure of duty, to remove them and appoint others in their place.

The answer of the defendant C. L. Raison, Jr., in substance, denies that he is hostile to the plaintiffs, and avers his good faith and fair dealing in accepting the appointment of *amicus curiae*, and in the work of making his report, and furthers avers the correctness thereof.

The first question presented for our consideration is, what powers, if any, are conferred upon the judge of the Campbell circuit court by the will of Elizabeth Speers? After providing what part of the estate of the testatrix shall be turned over by the executors to the three trustees named therein, the will goes on to say that they are to take it "in trust for the establishment and maintenance of a hospital in the city of Dayton in Campbell county, Kentucky." Then follows the language to which we must look to ascertain the duties and powers of the trustees. It is as follows: "The said hospital to be erected, maintained and conducted in such manner and upon such plan as in their judgment would do the greatest good." The language here employed is comprehensive indeed. It leaves everything to the judgment and discretion of the trustees. They are not required to consult with or be advised by others as to the manner in which the hospital is to be maintained or conducted, nor can they be interfered with in their control of the institution from any source, unless guilty of such mismanagement, extravagance, or fraud as would endanger the trust estate or violate the rights of the beneficiaries.

Let us now see what relations the Campbell circuit court sustained to the trust and trustees. On this point the will

provides as follows: "Said trustees shall annually report all their acts and doings to the highest court in said county having original equitable jurisdiction, and all vacancies in said trustees shall be filled by said court. Said court shall require from said trustees proper bonds for the performance of their duties, and it may allow them annually out of the trust funds a just and fair compensation." The highest court in Campbell county having original equitable jurisdiction is the circuit court of that county. It will be observed that the court is authorized by the will to receive annual reports from the trustees. It may allow the trustees annually, out of the trust fund, just and fair compensation for their services as such, and is given the power to compel them to give proper bonds; but nowhere, in terms, is the court empowered by the will to remove the trustees, except, perhaps, for a failure upon their part to give bond when required by the court to do so, and even for this cause the power to remove is implied from the power to require the bond. But in no reference to what may be done by the court is it said in the will that it is given any visitorial or other supervision over the hospital, or any control over the trustees in the manner of maintaining and conducting the hospital. But while no such power can be exercised by the Campbell circuit court by virtue of the will, it may, under the general power inherent in a court of equity, interfere, upon proper grounds, and in a proper action or proceeding, to prevent such acts or conduct upon the part of the trustees as would, if unrestrained, result in serious injury to the trust estate, or loss to the beneficiaries of the trust. This is especially true of trusts for charitable uses, for it is said that courts look with peculiar favor upon charitable gifts, and take special care to enforce them, to guard them from assault, and protect them from abuse. So ancient is this peculiar form of jurispru-

dence that even the oldest English law-writers are uncertain as to its origin. It is, however, said in Perry on Trusts "that the same religious spirit and charitable sentiment which led individuals and communities to devote large sums of money to pious uses, religious houses, churches and educational institutions, to the relief of the old and poor, and to the general promotion of the public convenience, utility and good, also led the makers and administrators of public laws to take a favorable and liberal view of such charitable donations." Perry on Trusts, vol. 2, secs. 688. Various statutes on this subject were from time to time enacted by the English Parliament, culminating in the enactment in 1601 of the famous statute on charitable uses known as 43 Elizabeth, and since its passage all objects named therein are considered charitable. It was said by Lord Eldon that this statute created no new law, but only "a new ancillary jurisdiction, by commission to issue out of chancery to inquire whether funds devoted to charitable purposes had been misapplied."

It seems to be well settled in most of the States of the American Union that courts of equity have an original and inherent jurisdiction in equity over charities, independent of the statute of Elizabeth. It was, however, held by this court in Moore's Heirs v. Moore's Devisees, 4 Dana, 365, 29 Am. Dec., 417, in an opinion by Judge Robertson, that the statute of 43 Elizabeth was a part of the common law, and also of the general statutes in force in Virginia, when Kentucky became a separate State, and, the latter State by her Constitution having adopted the laws of Virginia, it made that statute a part of the law of this State. The same conclusion was reached by this court in the cases of Baptist Ed. Society, 1 B. Mon., 215, and in Atty. Gen. v. Wallace's Devisees, 7 B. Mon., 611.

We are of opinion, therefore, that though the will of Elizabeth Speers conferred upon the judge of the Campbell circuit court no jurisdiction to supervise or control the trustees in the general conduct of the charitable trust confided to them, or to remove them, he has, independent of the will, the jurisdiction to prevent any misappropriation of the trust fund, or to correct any abuse in its management, by the trustees, provided such jurisdiction is invoked by some one having the right to institute an action or proceeding for that purpose. But he had no jurisdiction of his own motion to take such action as was attempted by him in the proceedings of which the plaintiffs complain. The former practice under the statute of 43 Elizabeth required a commissioner to inquire into and bring to the attention of the chancellor the abuses and mismanagement of funds and lands given to charity, but this proceeding by commission soon fell into disuse in England, and has never been employed in this country. In England, in lieu of the commission, it became the practice to require an original bill or information in chancery to be filed by the attorney general, and we may add that such has been the practice in this State. Moore's Heirs v. Moore's Devisees, 4 Dana, 365, 29 Am. Dec., 417; Chambers v. Baptist Ed. Society, 1 B. Mon., 215; Atty. Gen. v. Wallace, 7 B. Mon., 611. In Atty. Gen. v. Wallace, *supra*, which was an action brought in equity in the name of the attorney general of Kentucky by Cord, as relator, to have enforced a charitable devise, it was held that, in the absence of action by those interested in the trust, the action was properly maintainable in the name of the attorney general, and also that the relator was a necessary party, and further that the attorney general had no right to dismiss the action as he attempted to do. We have been unable to find that the rule thus announced has ever been abrogated by this court, and hence we conclude

that in order to authorize a chancellor to inquire into an alleged mismanagement of trust property, or a misappropriation of a trust fund, dedicated to a charitable or private use, his jurisdiction must be invoked by some one interested in the execution of the trust, or in the name of the attorney general, as the representative of the State, in an action or proper proceeding authorized by law to be instituted for that purpose. In this case no action or proceeding against the trustees had been instituted or was pending in the Campbell circuit court at the time the several orders and rules complained of were made and entered. The judge of the circuit court acted solely of his own volition and upon his own motion, and without information or action upon the part of any one. We are of opinion that he was without jurisdiction, and that the several orders and rules made and issued by him against the plaintiffs were void. Clay's Adm'r v. Edward's Trustee, 84 Ky., 548, 8 R., 559, 2 S. W., 147.

The makers of the present Constitution, by section 110 of that instrument, conferred upon this court authority "to issue such writs as may be necessary to give it general control of inferior jurisdictions." And this court has repeatedly exercised the power thus conferred, not only to prevent courts of inferior jurisdiction from acting in matters out of their jurisdiction, but also in cases where the right of appeal did not afford a plain, speedy, and adequate remedy. Hindman v. Toney, 97 Ky., 413, 17 R., 286, 30 S. W., 1006; Weaver v. Toney, 54 S. W., 732, 21 Ky. Law Rep., 1157, 50 L. R. A., 105; McCann v. City of Louisville, 63 S. W., 446, 23 Ky. Law Rep., 558; Clark County Court v. Warner, 76 S. W., 828, 25 Ky. Law Rep., 858.

Wherefore the prayer of the petition is granted, and the writ of prohibition may issue.