## Equitable Life Assurance Society v. Hardin, et al.

(Decided October 6, 1915.)

1. Prohibition—Power of Court of Appeals to Grant Under Section 110 Constitution.—The Court of Appeals has the power, under section 110 of the Constitution, to grant a writ of prohibition against the judge of an inferior judicial tribunal, when he is acting without his jurisdiction, or when he is proceeding erroneously within his jurisdiction, and there is no adequate remedy for the error by appeal.

2. Trusts—Production of Books.—In a litigation between a trustee and the cestui que trust relative to the trust fund, and the trustee has books, papers and documents showing his actions with the trust fund, or papers which he has received because of his trust relation, the cestui que trustent has a right to inspect the books, papers and documents, and the court will compel a production of them for that purpose, because the cestui que trustent

has an equal right to them with the trustee, but the time, place and circumstances of the production of the books and papers is a matter within the sound discretion of the court, to be exercised upon a consideration of all the circumstances of the case.

3.    Insurance, Life—Production of Books and Papers.—Where an insurance company is held to be a trustee for the policy holder, while the policy holder has an interest in the records of the insurance company, the other policy holders in the company have an equal interest with him, and in a litigation between the beneficiaries of the policy and the insurance company relative to the trust fund, the insurance company, at great expense and interference with its business, will not be required to produce its books and papers in court, or before commissioners, at a great distance from the place of their keeping, that they may be inspected and evidence drawn from them by their adversaries, but the company will be required to produce its books, papers and records to the beneficiaries of the policy, their agents and attorneys, at the place where they are kept, where the céstui que trustent and his agents and attorneys may freely inspect them and take summaries and copies therefrom, for such a length of time as may be reasonably necessary for the inspection, and thereafter, upon reasonable notice, will produce such books, papers, documents and records as the cestui que trustent may require, before an officer authorized to take depositions, at a place reasonably convenient to their place of keeping, to enable the parties to make such proof of their contents as they may desire, but not in such a manner and way as to unduly interfere with the business of the company.

4.    Trustees—Settlement—Production of Books.—It is the duty of a trustee to keep books, and to render an account to the cestui que trustent, and when he has tendered a settlement, which is disputed for accuracy or truthfulness, the cestui que trustent has a right to inspect the books to determine whether the settlement tendered is or is not correct.

ALEXANDER & GREEN, ALEX P. HUMPHREY and WM. MARSHALL BULLITT and LEWIS L. WALKER for petitioner.

O'REAR & WILLIAMS and J. P. HOBSON & SON for respondents.

OPINION OF THE COURT BY JUDGE HURT—Granting writ to stay court of inferior jurisdiction.

On the 15th day of November, 1869, the Equitable Life Assurance Society, of New York, issued to James Robinson, in Lincoln County, Kentucky, a policy of life insurance, by which it agreed, in consideration of the payment of an annual premium of $364.60, during the life of the insured, to pay to his children, upon his death, the

sum of $10,000.00. The contract of insurance embraced in the policy, also, provided that the policy should participate in the profits of the Society. The premiums were paid each year, until the death of the insured in the year, 1912. Notice and proof of the death of the insured were duly furnished to the Society. Thereafter, the children of the insured filed their petition in equity, in the circuit court of Lincoln County, against the Society, in which they alleged in substance the failure of the Society to pay to them the principal sum of $10,000.00, and that the profits during the life of the policy were, at least, $71,984,621.57, and that the portion of profits which should be set apart to the policy of Robinson was not less than $200,000.00, and that the premiums collected by the Society upon the policy were a sum in excess of the net cost of insurance of the life of the insured and the policies paid and of the necessary and actual expenses in conducting the business of the Society during the life of the policy, of not less than $10,000.00, and prayed a recovery against the Society of the principal sum of $10,000.00, and $200,000.00, because of alleged profits; and $10,000.00, because of alleged excessive premiums. Allegations were, also, made, that the Society had kept and then had in its possession books, papers, and documents relating to its business and the policy sued on, which would prove the averments of the petition; that plaintiffs did not know the number of policyholders entitled to participate in the profits, nor the premiums collected, nor the assets of the Society, nor the expenses, nor profits of it, nor its reserve, nor the other data necessary to be known, by which it could be determined the profits to which the policy sued on was entitled to have apportioned to it, and the amount they were entitled to recover because of the collection of excessive premiums, but that the Society had in its possession and had kept books, papers and documents, which would show all the necessary facts, and sought for an accounting, which they alleged, that by reason of the accounting requiring the production and examination of many books, papers, and accounts, and the service of expert accountants, it would be impracticable to try and determine the matters, in issue, in a court of law, and they could not have an adequate remedy, except upon an accounting in equity.

The Society, by answer, denied that the Society had accumulated any profits, which were due to be appor-

tioned to the policy sued on, except what had been paid to the insured during his life time; or that any excessive premiums had been collected; and, also, set out and tendered what it alleged was a true, complete, and accurate accounting of all its transactions, earnings, accumulations, expenses, dividends, receipts from and payments to or on account of the policy sued on; and in respect to the policy sued on, the premiums paid, the apportioned share of the expenses each year, the interest earned on its invested funds, the mortality cost, the reserve, and its share of the profits, for each year, from 1869 to 1911; the premiums collected, death claims paid, the expenses, losses and profits, which were apportioned to, the interest earnings of the funds of, the funds contributed by, and the amount paid out as endowments, annuities, surrender values, and dividends to policyholders of the class to which the policy sued on belonged, and, also, the same information as to all other classes of policies in the Society.

The plaintiffs replied and controverted all the material averments of the answer, and denied the truthfulness, completeness or accuracy of the settlement tendered, and the various allegations of the correctness of the data upon which the tendered settlement was based.

Upon motion of the plaintiffs, and over the objection of the defendant, the cause was then referred to commissioners, to hear proof and to make and report a true and complete settlement of the accounts between the litigants arising from the policy sued on. The order of reference to the commissioners provided, that they should hold their sittings at Stanford, Kentucky, and among other things, to accumulate such data, and to report such findings, as will necessarily involve all the accounts kept by the Society in the conduct of its business, from the year 1869, until the year, 1911. A portion of the order of reference is as follows:

"The defendant Society and its officers and agents are ordered to appear before the aforesaid commissioners at their sittings at Stanford, Kentucky, at such reasonable times and occasions, as the said commissioners may require, and shall bring with them for the examination and use of the said commissioners, such books, papers, documents, and records of the said Society, as may enable the said commissioners to comply with this order of reference, and the said defendant Society is ordered

to leave with the said commissioners copies of such entries upon such books, as the said commissioners may require, so as to enable them to make the settlement herein directed.  But said commissioners, in ordering production of said books and papers, will so regulate the proceedings, as to not interfere unduly with the other business of the defendant." Another clause in said order provides as follows:

"All the proof is ordered to be taken by and before said commissioners."

The defendant Society moved the court to enter an order in connection with the order of reference, which provided that the parties might have the right to take proof in accordance with the provisions of the Code governing such cases, but this motion was overruled.  The Equitable Assurance Society then filed its petition in this court against the judge of the Lincoln Circuit Court, and the commissioners, in which it alleged, in substance, that the judge did not have jurisdiction to appoint the commissioners; nor to require all the proof to be taken at Stanford; nor to require the production of the books, papers, and documents of the Society, nor to have them brought to Stanford to be inspected and used; nor to refer the case to commissioners without giving them directions or principles to guide them in the performance of their duties, all of which things, it was alleged, that the judge had erroneously done, without jurisdiction so to do, and against which alleged errors it did not have an adequate remedy by appeal, and prayed for a writ of prohibition against the judge, requiring the setting aside the order of reference, and restraining the commissioners from carrying out the order, until the further order of this court.

Under Section 110, of the Constitution, which provides that this "court shall have power to issue such writs as may be necessary to give it general control of inferior jurisdictions," it has been frequently determined what power this court has in regard to the issual of a writ of prohibition, and when it will interfere with inferior jurisdictions, by the issual of such a writ.  The well established doctrine is, that this court has the power to issue such a writ when the inferior court is proceeding out of its jurisdiction, or is proceeding erroneously within its jurisdiction, and the remedy for the error by appeal is not adequate.  Hindman v. Toney, 97 Ky., 413; 30 S. W., 1006; Shackelford v. Patterson, 110 Ky., 683;

L. & N. R. R. Co. v. Miller, 112 Ky., 464; Campbellsville Telephone Co. v. Patterson, 114 Ky., 52; Jenkins v. Berry, 119 Ky., 350; 83 S. W., 594; Hargis v. Parker, 27 R., 441; Jenkins v. Berry, 122 Ky., 311; Com. v. Berry, 29 R., 234; Boone v. Riddle, 27 R., 828; Morgan v. Clements, 153 Ky., 33; Carey v. Sampson, 150 Ky., 460; Rush v. Denhart, 138 Ky., 238; Fish v. Benton, 138 Ky., 644; White v. Kirby, 147 Ky., 496; Weaver v. Toney, 107 Ky., 419.

No writ of prohibition will be issued against ministerial officers, such as commissioners of courts, because Section 110, of the Constitution, confines the powers of this court to issuing writs of prohibition against judicial tribunals. Morgan v. Clements, 153 Ky., 33.

Of the matters complained of in the petition, they all seem to be such of which the Lincoln Circuit Court has jurisdiction, and this court ought not to interfere by granting the writ prayed for, unless the judge of that court is proceeding erroneously and the remedy by appeal does not afford an adequate remedy. Of the matters complained of, except as is hereinafter stated, we do not intimate any opinion, but suffice to say, that if any error was made in regard to them by the order of reference, the petitioner's right of appeal gives it an adequate remedy. That portion of the order of reference, however, which requires the officers and agents of the Society to appear before the commissioners, at their sittings at Stanford, when required by the commissioners, and to bring with them to Stanford, for the examination and use of the commissioners, such books, papers, documents, and records of the Society, as may enable the commissioners to comply with the order of reference, and to leave with the commissioners, copies of such entries upon such books as the commissioners may require, so as to enable them to make the settlement directed, and the requirement, that all the proof must be taken before and by the commissioners, presents another and different question.

The case of Marion National Bank v. Abel's Admr., 88 Ky., 428, cited by counsel for petitioner, is not in point. In that case, an effort was made to require a bank, which was not a party to a controversy, to allow its books to be inspected, to see if they contained evidence for one of the litigants, and the court refused the request, upon the ground, that the officers of the bank could be required to testify, and when testifying, to produce the books for inspection, and to give from them a statement of the accounts, and to file with their depositions a transcript of

the accounts. The court, in that case, however, by way of a dictum, held that the court might require a party to a suit to produce into court any documents he might have in his possession, to which his adversary has an exclusive right, or a right in common with his adversary. The case of Marcum v. Marcum, 154 Ky., 405, cited by respondents, only goes to the extent of holding, that a partner in litigation with a partner, in regard to the partnership accounts, may be required to produce the partnership accounts kept by him for the inspection of his adversary.

In Alabama Girls' Industrial School v. Reynolds, 143 Ala., 581, it was held, that where both parties have an equal right to the examination and inspection of documents and books of account, as in cases of partners, and books kept by the trustee of a trust account, and of documents acquired in a trust relation, which have to do with a pending suit between such parties, the court will require their production for inspection at any stage of the suit, to enable the parties to prepare the case for trial.

This court held, in the case of Equitable Life Assurance Society v. Winn, 137 Ky., 646, that an insurance company was a trustee for a policyholder, holding a tontine policy to invest and apportion the sums constituting the surplus. Upon principle, there is no discernible difference between the relations of the insurance company to the holder of a tontine policy and to the holder of an annual dividend policy, such as the one sued on, entitled to participate in the profits of the company.

In the case of Pierce v. Equitable Life Assurance Society, 1 American State Reports, 433; Peters v. Equitable Life Assurance Society, 196 Mass., 143, the Massachusetts Supreme Court held the relations between the policyholder and the company were that of debtor and creditor, and the same was held by the Illinois Supreme Court, in the case of Townsend v. Equitable Life Assurance Society, 263 Ill., 432, but in each of these cases it was held, that because of the complication of accounts involved, the cases were of equitable cognizance, and the policyholders were entitled to an accounting and of an inspection of the books. The same reason would make the case of equitable cognizance in this jurisdiction. The plaintiffs in the suit in which the order of reference complained of was made, were entitled to have an accounting by the petitioner, and are entitled to have an in-

spection of the books. Although petitioner tendered what it contends to be a correct account and a correct statement of its transactions, and the data upon which the results of its operations, as regards the policy sued on depends, the beneficiaries of the policy are entitled, from the books and records kept by petitioner, to see whether or not it is a correct account, and to draw from them evidence in support of their contention, if the books and papers contain such evidence. The books, papers, and documents of the Society, relating to the rights of the beneficiaries under the policy, are evidence of the transactions of the Society in regard to the policy and the rights of the beneficiaries under it.

The question remaining is, as to how the beneficiaries under the policy are to obtain the evidence of such books, papers, and documents. The petition discloses and there is no denial, that the books, papers, records, and documents of the petitioner are kept at its home office, in the City of New York; that it does business in forty states, and in foreign countries; that it has 550,000 policy holders; assets of $540,000,000.00, and insurance in force of $1,500,000,000.00. While the beneficiaries in the policy sued on have an interest in the books and documents of the petitioner, 549,000 other policyholders have a like interest. To bring such a number of the records of petitioner to Stanford, Kentucky, as is apparent, is necessary for the commissioners to comply with the order of reference, and to allow them to remain such a length of time, as would be necessary for the commissioners to examine them, would be attended with a very great and unnecessary expense, and a great interference with the business which it must transact with its other policyholders and customers. Most of the cases cited by counsel have been adjudications by the courts upon the subject of the production of documents, in states where such matters are controlled by statutes, or by rules of court, and the decisions turn on the construction of such statutes and rules, and are of little benefit in determining the question here.

In 17 Cyc., 462, the text is as follows:

"Where the inconvenience and expense attending the production of books and papers at the trial are very great, and where a sworn copy of the papers, or of the entries from the books is given, or proposed to be given, it has been held, that a strong case of the necessity of the

production of the books or papers themselves should be made to compel their production or to subject the delinquent to the penalty prescribed by the Statutes.''

In the case of Gregory v. Chicago, Milwaukee & St. Paul R. R., 10 F. R., 529, a motion was made to require the production of books and papers pertinent to the issues, and the court held, that in accordance with the long established practice in equity, that the right of a litigating party was to inspect, examine, and take copies of books and papers kept and belonging to his adversary, with the view of offering their contents in evidence, and such should be done in such a way as to prejudice as little as possible the owners of the books. Continuing, the court said:

''It would be most prejudicial and unjust to order a litigant to bring his books from a distant place, where they are in constant use, and deliver them to some official of the court for the convenience of an adversary party. If such were the rule, a foreign insurance company or railroad company, or private firm might be compelled, under penalties of contempt and default, to bring their books from far distant states, and even from beyond the seas, at their own expense, and to their grevious prejudice, for the use, benefit and convenience of their adversaries.''

In Bank of Commerce v. Newberry, 128 Pac., 1064, the plaintiff bank was domiciled in Idaho, and the suit was pending in Washington. The court refused to require the bank to bring its books into court, and said:

''A bank should not be put to the necessity of bringing its books from a foreign jurisdiction. * * * We may assume that the books are essential to the every day business of a going bank, and that the patrons and depositors have an interest therein. There is a way to get such evidence, either by deposition or by stipulating the accuracy of an account showing the entries. In the event of a retrial, the court will not compel the physical production of the books.''

The cases of National Exchange Bank v. Lubrano, 29 R. I., 64; Murison v. Butler, 18 La. Ann., 296; Neafie v. Miller, 37 Fla., 173; Washington Horse Exchange v. Wilson, 152 N. C., 21, although the decisions turn upon the construction of statutes and rules of court in force in the states, where rendered, the reasons for the decisions, in many ways, support the rule as stated in

Gregory v. Chicago, Milwaukee, and St. Paul R. R.,
*supra.*

The portion of the order, which requires the officers and agents of the petitioner to appear before the commissioners, at Stanford, was error. If their evidence is desired, the provisions of the Civil Code furnish ample means of securing their testimony, at their places of residence, if they reside more than twenty miles from the sittings of the commissioners. It was likewise error to require all the evidence to be taken by and before the commissioners. A witness who resides out of the state, or more than twenty miles from Stanford, or out of Lincoln County, could not be compelled to attend before the commissioners for the purpose of giving his deposition. Civil Code, Section 534; Hey v. Emerson, 142 Ky., 767. If witnesses, who reside out of the State, or more than twenty miles from Stanford, or out of Lincoln County, should refuse to attend before the commissioners, at Stanford, the party would be driven to the necessity of losing their evidence, or else to the taking of it contrary to the order of the court, and it can not be assumed, that a party litigant will disobey the orders of the court. The order should have permitted the taking of proof, as is permitted and required, in such cases, by the provisions of the Civil Code.

It seems that where the relation of trustee and *cestui que* trust exists, the latter has a right to have an accounting, touching the trust fund; that it is the duty of the trustee to keep an account in regard to the trust fund, and to render an account of it to the *cestui que* trustent, and in a litigation regarding the trust fund, the beneficiary has a right to inspect the books, papers, records, and documents kept by the trustee, and the court will order a production of the books, records, and documents for that purpose, but the time, place, and circumstances of the production of the books, records, and documents are matters within the sound discretion of the court, to be exercised by a consideration of all the circumstances of the case. To require the petitioner to produce its books, records, papers, and documents at Stanford, Kentucky, and to leave them there until the commissioners can examine them and then to furnish copies, as may be required, together with the personal attendance with the books and papers of the officers and agents of the Society, was error and an abuse of discretion, against which pe-

titioner had no adequate remedy by appeal, and the court should have, instead of such order, entered one requiring the petitioner to produce its books, records, papers, and documents, having relation to the policy sued on, and bearing upon the issues in the suit upon the policy, to the plaintiffs and their agents and attorneys, at its office, in the City of New York, and to permit them to freely examine and inspect the books, records, papers and documents, and to make summaries, and to take copies therefrom, for and during such a time as was reasonably necessary to make such inspection, and thereafter, upon reasonable notice from the plaintiffs, to produce such of said books, records, papers, and documents, as plaintiffs might require, before an officer authorized to take depositions, in New York City, at a place reasonably convenient to the office of petitioner, to enable plaintiffs to make such proof touching their contents, as they may desire, in the manner provided by law. The use of the books, records, papers, and documents, in making an inspection and taking proof, will be done in such a way and manner, as to not unreasonably interfere with the petitioner, in the conduct and transaction of its business.

The prayer of the petition is sustained, to the extent indicated by this opinion, and a writ will issue, directing the respondent, the Judge of the Lincoln Circuit Court, to set aside so much of the order of reference, as requires the officers and agents of the petitioner to appear before the commissioners at Stanford, Kentucky, and to produce before them the books, records, papers, and documents of the petitioner, at Stanford, Kentucky, and to furnish copies of them, and so much of the order as requires all of the proof to be taken by and before said commissioners, at Stanford, Kentucky, and to enter instead thereof, directions in conformity to this opinion.

As to all other matters complained of in the petition, and as to the commissioners, the writ is denied.