## Poston, et al. v. Daily, et al.

(Decided October 20, 1925.)

### Appeal from Jefferson Circuit Court

1. Elections—Registration Act Held to Authorize Striking of Names of those no Longer Entitled to Registration from Registration Book.—Registration Act 1924, section 17, providing for purgation of registration books of names wrongfully appearing thereon, is authority also for striking of names of those at one time but no longer entitled to registration.

2. Constitutional Law—Elections—Statute Providing for Striking of Names from Registration Book Held Not Unconstitutional as Violating Due Process and Equal Protection Clauses.—Registration Act Ky. 1924, section 17, providing that name of voter may be stricken from registration book without personal service or other notice of hearing, other than posting of notice on door of residence as provided by section 17, is not unconstitutional as violating due process or equal protection clauses of Constitution U. S. Amend. 14.

3. Elections—Right to Vote Guaranteed by Constitution is Not Absolute but Qualified.—Right to vote guaranteed by Constitution is not absolute but qualified.

4. Elections—Validity of Registration Laws Determined by Whether or Not they are Fair and Reasonable.—Validity of registration laws, under both state and federal Constitution, is determined by whether or not they are fair and reasonable.

5. Elections—Voter has Burden of Showing Right to Registration.— Under Ky. Stats., section 1477, voter, to obtain registration, must show right thereto, and again when he casts his vote if challenged.

6. Elections—Name should Not be Stricken from Registration Book Without Some Proof by Challenger that it was Not Entitled to Remain Thereon.—Fact of registration raises presumption that voter was entitled thereto at time of registration, and under Registration Act 1924, section 17, name should not be stricken from

registration book without some proof by challenger that it was not entitled to remain thereon.

WALTER P. LINCOLN, ALLEN P. DODD and LAWRENCE J. MACKEY for appellants.

W. W. CRAWFORD, ALFRED SELLIGMAN and ALEX G. BARRET for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CLARKE—
Affirming on both direct and cross appeals.

The parties to this action instituted under the Declaratory Judgment Act are nominees and managers in Louisville and Jefferson county of the two larger political parties, and they seek a construction of the registration law (chapter 64, Acts of 1924) upon three questions of procedure incident to purging the city registration books of names not entitled to be or remain thereon.

The first of these is whether, under section 17 of the act, names may be stricken from the 1924 registration books of such voters as are shown to be fictitious or to have died or removed from the precinct where registered, or otherwise become disqualified since the date of registration.

The act provides for registration in 1924 of all qualified voters and for an annual registration thereafter of only such voters as were not registered in 1924 or have acquired the right to vote since that time. Its evident purpose was to relieve voters of the necessity of registering every year as formerly or again after being once registered. To this end provision is made in section 14 of the act for change of registry to conform to change of residence by any registered voter; and section 17 provides for an annual purgation of the registration books of names wrongfully appearing thereon.

These and other provisions make it perfectly clear that the legislature intended to provide a permanent registration of all citizens entitled to vote and the means of keeping it up to date. This being true it is likewise clear that section 17, which alone refers to purgation, was intended not only to provide a means of striking names improperly registered, but names as well of those at one time but no longer entitled to register. Otherwise the registration books would soon become clogged with names of parties not entitled to vote. Such names not only serve no useful purpose on the registration books,

but, upon the other hand, offer a tempting opportunity for use as a mask and protection for illegal voters. Neither the language nor the purpose of section 17 suggests a necessity or excuse for any such construction.

We are, therefore, clearly of the opinion, as the lower court held, that fictitious names or the names of voters who have died or removed from the precinct where registered or otherwise become disqualified since registration may be stricken at the times and in the manner provided by section 17 of the act.

The second question for decision is whether the name of a voter may be stricken without personal service upon him of notice of the hearing and where, as is permitted under certain circumstances by section 17 of the act, the only service has been by posting the notice upon the door of his residence as shown by the registration books. The lower court also answered this question in the affirmative, and counsel for appellees complain thereof upon the ground that to strike a voter's name from the registry upon such service of notice of the hearing amounts to a denial of the due process and equal protection guaranties of the Fourteenth Amendment to the federal Constitution.

The primary basis of this argument is the assumption that the right to vote, as guaranteed by the state Constitution, is an absolute right; whereas that right, of inestimable value though it be to both the citizen and the state, is not absolute but qualified. The same sections of the Constitution that guarantee the right to vote and prescribe the primary qualifications of residence and age also prescribe as an additional qualification for residents of cities having a population of more than five thousand, compliance with the registration laws which the legislature is authorized and directed to enact. This being true, we take it that the only test to which registration laws may be subjected to determine their validity, not only under the state but also under the federal Constitution, is whether or not they are fair and reasonable. One of the purposes of this, like all registration laws, is to secure to every citizen possessing the right of franchise a reasonable opportunity to prove and exercise that right. Another and equally important purpose of all such laws is to prevent parties who do not possess all constitutional qualifications from participating in elections. Fair elections are as dependent upon a rigid exclusion of illegal votes as upon a full opportunity for

participation by all legal voters. Surely then no legal voter has any constitutional right to complain of any reasonable regulation to exclude illegal votes from elections, which is the sole purpose of the purgation proceedings authorized by section 17 of the act.

It would have been desirable of course to procure personal service in all cases. But you can not procure personal service on a fictitious person, or a dead person, or a person who has moved out of the state. Certainly as to each of these classes some kind of substituted service was not only advisable and reasonable but absolutely necessary. And how could provision have been made for service of notice on any of these classes that would have been better or more reasonable than is done by posting notice on the door of the house from which they were registered as their places of residence? No better or fairer plan is suggested. Indeed the only criticism of this plan is that possibly some legal voter who has simply moved around the corner or is away from his home temporarily may thus be served and lose his right to vote without a hearing and wrongfully. Even this appears almost if not wholly fanciful when we remember how thoroughly both parties are organized and equipped to prevent any such possible injustice to any one who actually lives anywhere in the precinct; that the legal voter is permitted by section 14 of the act to change his registration when he moves out of the precinct; and that he has already had notice by mail of the preliminary hearing which could hardly have failed to reach him unless he had moved out of the precinct, was dead or never existed.

But even if we might concede as much as is claimed against such service, that occasionally it may fail of its purpose, it would not follow that the law or the method is invalid, since such possibilities exist even where personal service is required. Neither absolute certainty nor precise equality is ever attainable, and despite the extravagant claims sometimes made in their names, both due process and equal protection recognize the impossibility of providing by law against all human limitations and frailties. So conceding as we do that these guaranties of the federal Constitution apply to proceedings to purge registration rolls of illegal voters, we are yet of the opinion, as was the unanimous holding of the seven circuit judges who tried the case below, that neither of these guaranties is violated by the provision for posting the

notice upon the door of the place from which a name has been registered upon proof that no such voter can be found or personally served at that place, even though this method of service is confined to this particular kind of proceeding and to cities of the first class.

The third and last question presented for decision is whether upon the hearing before the circuit court the challenged registrant bears the burden of proving his right to remain upon the registration books. This contention of appellants was denied below and we think correctly so. It is true he must sustain this burden to get his name on the registry and again if challenged when he casts his vote (Kentucky Statutes, 1477), but the fact he has been registered necessarily carries with it the presumption he was entitled thereto at the time of registration. This presumption also prevails unless and until his right to remain on the rolls is challenged in the method provided. That method consists in simply filing an affidavit by the executive head of one of the two larger parties without setting forth the grounds therefor.

It is then provided he shall be notified by mail to appear before a committee of two selected from the two parties, who are required to investigate and hear proof of his right to registration. If they deny him this right he may appeal to the circuit court, or if they do not agree they must certify the matter to the circuit court for a trial de novo. This alone would indicate the circuit court must also have proof on the matter. Besides, he is simply notified to appear. He is not cited to show cause why his name should not be stricken, and there is no pleading of any kind that would support a default judgment. We, therefore, are convinced it was not intended that a name should be stricken without some proof to show it was not entitled to remain on the registration books. This burden of the challenger is sustained, however, when it is shown under oath that no such voter could be found or resides at the place given as his residence when he was registered, and the burden then shifts to him to establish his residence and right to vote in the precinct at the time of the hearing.

This is what we conceive to be the fair intendment of the provisions of section 17, and the contention of appellants that his name shall be stricken without proof and as by default if only the challenged voter fails to answer after service as if upon default is not in our judg-

ment supported either by the language of the act or by analogy of any other proceeding. Indeed this proceeding in all its details is strictly *sui generis,* and necessarily so because of the apparent necessity for a different kind of service than in ordinary actions, and for a speedy, informal and summary determination of the matter in the short period between the annual registration and election dates.

As the judgment of the circuit court accords with these views in all respects, it is affirmed upon both the direct and cross appeals. The whole court sitting.