MARGARET T. O'BRIEN, Plaintiff, *v.* THE CITY OF SARATOGA SPRINGS, N. Y., Defendant.*

Supreme Court, Saratoga County, April 2, 1928.

**Municipal corporations — claim for injuries — complaint alleges plaintiff was injured in registration polling place in city of Saratoga Springs — election officers were not agents of defendant municipality and defendant is not liable for their acts or omissions — defendant was acting as governmental agent at time plaintiff was injured — complaint dismissed.**

The complaint in this action for damages arising from injuries suffered when plaintiff tripped and was thrown to the floor of a registration polling place in the city of Saratoga Springs by a rope by which a dog, belonging to one of the inspectors, was tied to a table at which the election officers were working and where she was required to attend must be dismissed, since the election officers were not agents of the defendant municipality and defendant is not liable for their acts or omissions.

The defendant was acting as a governmental agent, not as a business corporation, at the time of plaintiff's injuries, and the action cannot be maintained.

MOTION by defendant for judgment on the pleadings on the ground that the complaint does not state a cause of action.

*John W. Nichols,* for the plaintiff.

*Butler, Kilmer, Hoey & Butler [Carleton J. King* of counsel], for the defendant.

HEFFERNAN, J. This is an action to recover damages for personal injuries alleged to have been sustained by plaintiff by reason of defendant's negligence. The latter has moved for judgment on the pleadings on the ground that the complaint fails to state facts sufficient to constitute a cause of action. For the purpose of this motion the material allegations of the complaint are that defendant,

---

* Affd., 224 App. Div. ——.

pursuant to the Election Law, was charged with the duty of providing and designating polling places for the registration and enrollment of voters within its corporate limits and that in obedience thereto it designated a building known as " Shea's barn " as the polling place in district No. 7 for such purposes for the year 1927; that on October fourteenth of that year, while plaintiff was lawfully at such polling place in order to register as a voter for the general election to be held in November following, at which election those qualified were entitled to vote for State, district, county and local officers, and while approaching the table at which the election officials were working and where she was required to attend, she was tripped and thrown violently upon the floor by a rope or cord by which a dog, belonging to one of the inspectors, was tied to such table, and that she thereby sustained the injuries specified in her pleading.

Defendant asserts that upon these facts it affirmatively appears that it was engaged in a governmental function and that consequently it is immune from liability. It is plaintiff's claim that in providing for, conducting and taking the formal steps incident to an election in compliance with the provisions of the Election Law, defendant is performing a corporate and not a public duty.

Registration of voters is required by the Election Law (§ 153). This statute also makes provision for the kind, number, qualifications and appointment of election officers in the various cities of the State (§§ 40 and 41), and directs that " the inspectors, and each of them, shall preserve good order within and around the place of registration and keep access thereto unobstructed " (§ 160).

The right to vote is not a natural right of the citizen but is a political privilege to be given or withheld at the exercise of the lawmaking power of the sovereignty. It can only emanate from the people, either in their sovereign statement of the organic law or through legislative enactment which they have authorized. (20 C. J. 60; *People* v. *Barber*, 48 Hun, 198.) The State Constitution (art. 2, § 1) provides that all citizens fulfilling certain conditions as to age, residence and citizenship shall be entitled to vote. Registration is a method of proof prescribed for ascertaining the electors who shall qualify to cast votes. It is a part of the machinery of elections and is a safeguard against frauds. (*People ex rel. Stapleton* v. *Bell*, 119 N. Y. 175.) It is apparent, therefore, that so far as the determination of the question involved here is concerned, there is no difference in law between registration and election.

Whether a municipal corporation may be made to respond in damages for a tort either of misfeasance or nonfeasance in connection with a particular department of municipal activity depends, accord-

Supreme Court, April, 1928.        [Vol. 131

ing to the weight of authority, upon the question whether the duties of that department pertain to its public or to its private functions, and the same criterion applies to its liability for torts in connection with buildings used by it. Obviously, the nature and character of the function performed in the building in question — in other words the particular use to which the building is devoted — materially affects the question of liability. In reference to liability for torts a municipal corporation has a dual character, the one public and the other private, and exercises correspondingly twofold functions and duties. The one class of its powers is of a public and general character to be exercised in virtue of certain attributes of sovereignty delegated to it for the welfare and protection of its inhabitants or the general good. The other relates only to special or private corporate purposes for the accomplishment of which it acts, not through its public officers as such, but through agents or servants employed by it. In the former case its functions are political and governmental, and no liability ordinarily attaches to it at common law, either for nonuser or misuser of the power. In the exercise of its purely municipal functions, or the doing of those things which relate to special or private corporate purposes, the corporation stands upon the same footing with a private corporation and will be held to the same responsibility for injuries resulting from its negligence while acting within the scope of such municipal power. (43 C. J. 921–924.) The principal difficulty which the courts have experienced has been in ascertaining and defining the line of demarcation between public or governmental duties, and private or corporate duties.

Plaintiff's counsel urges that because defendant was performing a duty absolutely imposed upon it by law, and because the election officials were appointed by it, are removable by it and paid by it, they are its officers and representatives. That conclusion does not necessarily follow. It is always the character of the service involved which must serve as the criterion to govern in controversies of this kind. As we have seen, municipal functions are twofold. When in the performance of duties which spring from sovereignty and which pertain thereto, their acts are political and governmental, their officers and agents, although elected or appointed and paid by them, are nevertheless public functionaries performing a public service in which the city, as such, has no particular interest, and from which it derives no special benefit or advantage in its corporate capacity. Such officials are not, strictly speaking, servants or agents of the municipality but are officers and agents of the State and for their acts of omission and commission the city is not liable. In the other case they exercise functions

granted for the specific benefit and advantage of the urban community embraced within the corporate boundaries. Logically, all those acts are strictly municipal functions which specially or peculiarly promote the comfort, convenience, safety and happiness of the citizens, and for the acts of those officers or agents, in this respect, the city is held to accountability. A very complete and comprehensive statement of the rule to be applied is contained in the following formula: " So far as municipal corporations of any class, and however incorporated, exercise powers conferred on them for purposes essentially public — purposes pertaining to the administration of general laws made to enforce the general policy of the State — they should be deemed agencies of the State, and not subject to be sued for any act or omission occurring while in the exercise of such power, unless by statute, the action be given; in reference to such matters they should stand as does sovereignty, whose agents they are, subject to be sued only when the State by statute declares they may be. In so far, however, as they exercise powers not of this character, voluntarily assumed — powers intended for the private advantage and benefit of the locality and its inhabitants — there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage to which an individual or private corporation exercising the same powers for purposes essentially private, would be liable." (15 Am. & Eng. Ency. of Law, 1141.)

The authorities commencing with *Russell* v. *Men of Devon* (2 T. R. 667) are unanimous and decisive that at common law a private action cannot be maintained against a municipal corporation for neglect to perform a public duty imposed on it, unless the action were given by some statute. It has been held that a municipal corporation is not liable for negligence in the construction and maintenance of buildings or apparatus used solely for governmental purposes, and this rule applies to a court house and its appurtenances, including the sidewalk adjacent thereto, to a city or town hall, and to other public buildings, such as schoolhouses, police or fire stations, prisons, jails or workhouses, and hospitals or pest-houses. (43 C. J. 1166; *Boutet* v. *City of New York*, 199 App. Div. 835; 235 N. Y. 546; *Goldfarb* v. *City of New York*, 108 Misc. 505; *Schlegel* v. *City of New York*, 90 id. 285; *Ross* v. *City of New York*, 191 N. Y. Supp. 744; *Finkelstein* v. *City of New York*, 183 App. Div. 539; *Lefrois* v. *County of Monroe*, 162 N. Y. 563.) In *McNeil* v. *Boston* (178 Mass. 326) it was held that a city was not liable for injuries to a citizen caused by a defect in a flight of steps leading to a basement of a schoolhouse used as a polling place which he was descending for the purpose of entering the room to vote. In

*Eastman* v. *Meredith* (36 N. H. 284), which was an action by an inhabitant and legal voter, attending a town meeting in the town house, the floor of which gave way by reason of being negligently and imperfectly constructed, it was held that, assuming it to be the duty of the town to provide a safe and suitable place for a town meeting, yet a citizen of the town, who suffered a private injury in the exercise of his public rights, from neglect of the town in the performance of this public duty, could not maintain an action against the town to recover damages for the injury. The leading case in the United States on the question of the implied liability of a municipal corporation for the neglect of a public duty is *Hill* v. *Boston* (122 Mass. 344) in which it was held that a duty which is imposed upon an incorporated city, not by the terms of its charter nor for the profit of the corporation, pecuniarily or otherwise, but upon the city as the representative and agent of the public, and for the public benefit, and by a general law applicable to all cities and towns in the Commonwealth, is a duty owing to the public alone, and a breach thereof by a city, as by a town, will not support an action by an individual, even if he sustains special damages thereby.

The registration and enrollment of voters are, undoubtedly, subject-matters of general concern, and how they shall be accomplished are public questions. When the Legislature leaves these details, to any degree, in the hands of the several municipalities of the State, they act as governmental agents and not as business corporations. The provisions of the Election Law are mandatory and leave nothing for the city, as a distinct body, to decide. The statute simply directs the city to designate the place where an election shall be held, and prescribes the method of appointing the officials, their number and qualifications. It seems to me that the duties devolving on the inspectors of election do not relate to the exercise of corporate powers. Neither are their duties for the benefit of the city in its local or special interest. Obviously, their duties are public in their nature and consequently such officials should be regarded as the servants and agents of the public instead of the city.

In what question is the State, in its sovereign capacity, more vitally interested? The right of suffrage is one of the most valuable and sacred which the Constitution has conferred upon the citizens of the State. The vote symbolizes the triumph of the people over privilege. The great problem of government by the people depends, for its wise solution, upon the fidelity with which this service is performed. It is the one duty which underlies all others. With it, we may hope to realize something of the greatness and nobility of citizenship in the Republic. Without it, the loudest voices

assumed patriotism are but sounding brass and tinkling cymbal. Momentous issues are no longer decided by bullets but by ballots. It is of paramount importance that this right should be exercised conscientiously and intelligently. By availing himself of this privilege there is no issue the voter cannot decide; there is no party he cannot discipline; there is no objective he cannot attain; there is no abuse he cannot suppress; there is no wrong, either real or fancied, he cannot redress; there is no law he cannot enforce or repeal. It would be strange, indeed, if this great prerogative, won at such a tremendous cost, should be regarded with indifference by men and women whose ancestors wrung Magna Charta from King John at Runnymede, and the recognition of American independence from King George at Yorktown.

In my examination of the adjudications in this and other jurisdictions, I have been unable to find any case which has gone to the length of holding that an action can be maintained in the situation presented by the case at bar. The authorities that come nearest are those in which it has been held that a town or city is liable for damages caused by neglect to perform a public duty arising from the grant of some special power. These cases, however, cannot be regarded as controlling here because they were decided upon a distinction between the exercise of such special powers and the exercise of the general powers which belong to all cities as mere public and political divisions of the State, and upon the ground that the special powers thus granted to an individual city were in the nature of privileges accepted upon the implied condition of performing the public duties growing out of them. This case cannot be classed with any of those. The question here is whether a city is liable in damages to one who has suffered injury because of neglect to provide a safe place for the registration of voters. The public duty relied on is not enjoined by express provision of any statute. If such a duty exists it must depend on some general law applicable to all cities. Here there is no contract, express or implied, between the State and the defendant city, and no grant of special power which can be supposed to have been voluntarily accepted by the defendant upon condition of performance of a public duty. There is no distinction in principle between an omission or total neglect to perform a public duty, and negligence in the manner of performing it. The duty is not performed unless it is properly performed. That plaintiff cannot maintain this action is a principle sustained by an almost unbroken line of decisions in the courts of this country.

For these reasons the complaint must be dismissed, with costs.