## Clark v. Ardery.

August 11, 1949.

Reid Prewitt for appellant.

Phillip P. Ardery for appellee.

OPINION OF THE COURT BY CLAY, COMMISSIONER—Sustaining writ of prohibition.

In an original proceeding before this Court the petitioner, suing on behalf of himself and others similarly situated, requests us to prohibit, enjoin and restrain the respondent, Judge William B. Ardery, from enforcing an original and supplemental judgment entered by him in a mandamus suit on July 27, 1949. The petition was considered by the full Court with the exception of Judge Rees.

The controversy arises out of proceedings initiated

in Bourbon County to purge a number of voters who allegedly have become disqualified because of death, absence, removal, or other reason. The Bourbon County Board of Registration and Purgation (hereinafter referred to as "Board") met on July 7, 1949 for the purpose of conducting an investigation and removing from the election rolls the names of those persons no longer properly registered. After sitting for several days, the Board prepared a list of approximately 5300 names whose qualifications were in question. Apparently they were given notice as required by statute, and some appeared. On July 25 the Board adjourned without taking any final action with respect to the great majority of these persons. The procedure before the Board, so far as it went, is not in question.

Soon after the Board's adjournment, a mandamus suit was filed by a resident taxpayer of Bourbon County. He prayed that the Board be required to reconvene and perform, prior to August 6, 1949, its duty of purging and removing from the registration lists the names of all persons who were not qualified to vote. That cause was heard before the respondent, Judge Ardery, and the original and supplemental judgments entered by him are the ones subjected to this attack. In the supplemental judgment (which incorporates the terms of the original order) he found that "the time provided for further meetings" of the Board under KRS Chapter 117 had expired before a final order could be entered. That judgment thereupon decreed:

"It is, therefore, ordered that the name of each voter listed by the Board for purgation be immediately suspended from the election lists, except those who protested, and whose protests were upheld by the Board.

"It is further ordered that the Bourbon County Court Clerk, Ed Drane Paton, remove the registration cards or names of the voters listed by the Board for purgation, except those voters who protested successfully in person the action of the Board, from the registration lists or registration books, so that the names shall not be sent to the precincts on Primary Election day for the coming Primary election on August 6, 1949, in which such voters are not qualified to participate."

The supplemental judgment further provided that

those voters whose rights were not determined in the original judgment, and who were unable to or did not appeal to the Circuit Judge or the County Judge to have their voting rights summarily determined, should be allowed to vote in the primary election upon executing a sworn written statement showing those facts and their legal qualifications.

A preliminary question raised by respondent may be disposed of at the outset. He filed a special demurrer to the petition in this proceeding and contends petitioner had no right to sue for and on behalf of any one except himself. We are referred to the case of Board of Registration Com'rs et al. v. Campbell, 251 Ky. 597, 65 S. W. 2d 713, wherein a special demurrer was sustained partly on the ground that the subject matter of the suit was not of such common and general interest as would entitle the plaintiff to sue on behalf of other voters. The record in the present case shows plainly that the issue involved *is* of common and general interest to all of the voters whose registrations were suspended, and it is obviously impracticable to bring these persons before the Court within a reasonable time. Under Civil Code of Practice Section 25, petitioner may properly sue on behalf of others similarly situated, and the judgment complained of, if erroneous or void as to petitioner, is erroneous or void as to them.

A second preliminary matter was argued by the parties which involves petitioner's right to a Writ of Prohibition. Under Section 110 of the Kentucky Constitution, this Court is granted power "to issue such writs as may be necessary to give it a general control of inferior jurisdictions." As stated in Equitable Life Assur. Society v. Hardin, 166 Ky. 51, at page 55, 178 S. W. 1155, 1157: "The well-established doctrine is that this court has the power to issue such a writ when the inferior court is proceeding out of its jurisdiction, or is proceeding erroneously within its jurisdiction, and the remedy for the error by appeal is not adequate."

The two grounds upon which such writ may be issued are more particularly defined in Evans v. Humphrey, Judge, 281 Ky. 254, 135 S. W. 2d 915. They are: (1) where a lower Court is proceeding in a matter in which it lacks jurisdiction and there is no remedy in an

intermediate court, and (2) where the Court exercises its jurisdiction erroneously and great injustice and irreparable injury will result because the petitioner has no adequate remedy by appeal or otherwise. See also 42 Am. Jur., Prohibition, Section 8 et seq. Clearly petitioner and those similarly situated had no remedy by appeal from the judgments complained of because they were not parties to that suit. It is likewise obvious that the petitioner and others similarly situated will suffer grave injustice and irreparable injury if the Court has erroneously deprived them of their right to vote.

It is agued petitioner may still vote if he files the affidavit prescribed in the supplemental judgment. We do not so read it. This judgment permits the filing of an affidavit by those ''whose rights were not determined in said original judgment * * *.'' Petitioner's rights were determined in the original judgment when his registration was suspended.

Even if the construction contended for by respondent is permissible, the minimum effect of the judgment is to impair petitioner's right to vote. It is an automatic challenge of this right. It places on petitioner, and others similarly situated, the burden of proving their qualifications at the polls. If properly registered (as provided in KRS Chapter 117, under the authority of Section 147 of the Constitution), a person is presumptively entitled to vote. See Poston et al. v. Daily et al., 210 Ky. 649, 276 S. W. 554. The action of the respondent destroyed this presumption and required petitioner to present further evidence of his right to qualify. If respondent exceeded his jurisdiction or was clearly in error in entering this judgment, the injury to petitioner was of sufficient magnitude to entitle him to invoke the remedy here sought.

We now come to the question of whether or not the judgments complained of were proper. Petitioner's principal argument is that the time limits for the meeting of the Board as prescribed in KRS 117.420 and 117.425 had expired (these two sections appear inconsistent) and, therefore, the Board was without authority to enter any final purgation order. If so, the Court would have no power to order the Board to act contrary to law. We are not convinced that the time limits fixed by the two sec-

tions above mentioned are mandatory, but it is not necessary to decide that question in this case. Assuming the Board could have lawfully reconvened and entered a final purgation order, and assuming respondent could have directed the Board to perform its duties and complete its work, *the judgments did not command the defendant Board to act.*

The portion of the supplemental judgment heretofore quoted effectively suspended petitioner's registration without requiring any action on the part of the Board. Though counsel for respondent has vigorously argued that this judgment requires the Board to perform its duties, we are unable to so construe the very plain language used. If there could be any question concerning its proper construction, the verified answer of respondent settles the problem when he states specifically as follows: "The Court decided that what he had the jurisdiction (power) to order the Board to do, he could, in the exigent circumstances, do as if done by them pursuant to this order."

The question thus presented is whether or not respondent, acting as a court, had authority to accomplish what the statutes specifically empower and direct the Board to do. In this instance, such action effectively denied petitioner's right to vote in the forthcoming primary election by suspending his registration.

The purpose of the original proceeding was to obtain a Writ of Mandamus. This is a remedy of great antiquity. It is defined in Section 477 of the Civil Code of Practice as: "an order of a court of competent and original jurisdiction, commanding an executive or ministerial officer to perform an act, or omit to do an act, the performance or omission of which is enjoined by law; * * *."

The remedy is obviously in personam. See 34 Am. Jur., Mandamus, Section 7. Yet the judgment in this case under consideration did not order, direct or command the defendant members of the Board to do anything . It had the effect of immediately withdrawing petitioner's name from the election lists. The petitioner was not a party to the suit, but his rights were peremptorily cut off. Respondent was, therefore, acting with-

out jurisdiction of the parties directly affected by the judgment.

Even if the question were not strictly one of jurisdiction, respondent had no authority to suspend the rights of petitioner. Chapter 117, and particularly Section 117.440, empowers the Board to investigate the registration lists, to challenge voters, and to hear and determine whether or not the registration of those challenged shall be stricken. The Board is an executive agency of the state.

A fundamental principle of our constitutional government is that neither of the three branches, executive, legislative or judicial, shall exercise the powers and duties of the other branches. A court has no semblance of power to perform the functions of an independent executive agency. It is here respondent exceeded his judicial power. He, as a court, attempted to purge petitioner and other voters, assuming a prerogative vested exclusively by statute in the Board. While the Court has the right in a mandamus proceeding to direct the performance of an act, it does not have the authority to perform the act itself. See 55 C. J. S., Mandamus, sec. 341, and North Main Land Co. et al. v. Wilson, 245 Mich. 537, 222 N. W. 705.

There is yet another objection to the judgment under attack. Even if construed as directing the Board to act, the orders effectively strip that body of its official discretion in the purging process. It is the Board's duty to decide whether or not questioned voters are entitled to registration. A proper Writ of Mandamus may compel such a body to exercise its discretion in passing upon the matter before it, but such order should not ordinarily coerce a particular determination. Respondent, therefore, usurped one of the principal functions of the Board when he entered the judgments forthwith suspending the registration of the voters involved. See 34 Am. Jur., Mandamus, Section 68; Board Trustees Fireman's Pension Fund v. McCrory, 132 Ky. 89, 116 S. W. 326, 21 L. R. A., N. S., 583.

It is our view that the particular respondent involved, Judge William B. Ardery, acted courageously with the finest motives in entering the judgments complained of. This Judge, so well known to us all, is a

gentleman of the finest character and occupies a position of high judicial eminence. We are aware that, confronted with a difficult problem, he took a course which seemed to him the only practical one to accomplish a much needed revision of the registration lists in Bourbon County, The whole Court is in sympathy with the end he attempted to achieve, We cannot, however, approve the exertion of judicial power to perform a function vested in an executive body. Otherwise, our courts would be invading the domain of another branch of government, and gratuitously assuming responsibilities with which the latter is invested.

During the argument counsel for respondent laid great stress on the proposition that unless respondent's judgments were upheld calamitous events would take place at the August Primary Election. At the time of the argument, we were not impressed with this feature of the case since our laws afford adequate opportunity for interested parties to challenge at the polls those persons whose qualifications are in doubt. At the time of writing this opinion, it is now apparent that the election difficulties envisioned did not materalize. Our decision in this case, which protected the rights of those entitled to vote, cannot therefore be construed as having given either aid or comfort to those lacking proper qualifications.

For the reasons stated, the petition for a Writ of Prohibition is sustained and the writ is granted as prayed.

Judge Thomas dissents.